IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,

    Plaintiff,                         No. CIV 10-cv-1053-JAM-JFM

    vs.

ROBERTA LUALA CURTIS, dba
TIERRA BUENA TAVERN,              ORDER AND

    Defendant.                   FINDINGS & RECOMMENDATIONS

_____/

       Pending before the court is plaintiff's motion for default judgment against defendant Roberta Luala Curtis, doing business as Tierra Buena Tavern, located at 2365 Butte House Road, Yuba City, CA 95993. The court has determined that the matter shall be submitted upon the record and briefs on file and accordingly, the date for hearing of this matter shall be vacated. Local Rule 230. Upon review of the motion and the supporting documents, and good cause appearing, the court finds as follows:

FACTUAL AND PROCEDURAL BACKGROUND

       On April 29, 2010, plaintiff, an international distributor of sports and entertainment programming, filed a complaint against defendant alleging that the latter unlawfully intercepted and exhibited a broadcast of a program featuring a welterweight

1

championship boxing fight between Manny Pacquiao and Ricky Hatton, IBO Welterweight Championship Fight Program ("the Program")[1] in her establishment for commercial advantage without obtaining a sublicense from plaintiff for its use, in violation of the Communications Act, 47 U.S.C. § 605, the Cable Communications Policy Act, 47 U.S.C. § 553, and state law.  The complaint alleges defendant exhibited the Program on May 2, 2009.

Plaintiff brings this action pursuant to (1) a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that defendant knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain; (2) a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations; (3) a claim for conversion alleging that defendant tortiously obtained possession of the Program and wrongfully converted it for his own benefit; and (4) a violation of the California Business & Professions Code § 17200, et. seq.

In the complaint, plaintiff seeks $110,000 in statutory damages as well as attorneys' fees and costs for Count I; $60,000 in statutory damages, as well as attorneys' fees and costs for Count II; compensatory damages, exemplary damages, and punitive damages for Count III; and restitution, declaratory relief, injunctive relief, and attorneys' fees for Count IV.[2]

The summons and complaint were served on defendant by personal service on July 7, 2010.  <u>See</u> Doc. No. 5; Fed. R. Civ. P. 4(e)(2); <u>Pacific Atlantic Trading Co. v. M/V Main Express</u>, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal

---

[1] The Program included the main boxing match between Manny Pacquiao and Ricky Hatton, as well as the undercard (preliminary) matches, televised replay and fight commentary. <u>See</u> Pl.'s Mem. of P. & A. in Supp. of Mot. for Default J. at 1.  The affiant declaration submitted in support of plaintiff's motion for default judgment notes that defendant was broadcasting a boxing match between Matt Korobov and Anthony Bartinelli, the undercard match of the Program.  <u>See</u> Gagliardi Decl., ¶ 7; Aff. Decl., Doc. No. 23-3 at 2.

[2] On November 10, 2010, this action was dismissed by stipulation of the parties.  <u>See</u> Doc. Nos. 11-12.  On February 15, 2011, plaintiff filed a motion to set aside judgment based on defendant's failure to comply with the parties' settlement.  Doc. No. 13.  By order dated March 22, 2011, the Honorable Frank C. Damrell, Jr., granted plaintiff's motion and reopened the case.

jurisdiction). Defendant has failed to file an answer or otherwise appear in this action. The clerk entered default against defendant on September 14, 2011.

Request for entry of default and the instant motion for default judgment and supporting papers were served by mail on defendant at her last known address. Doc. No. 23. Defendant did not file an opposition to the motion for entry of default judgment. Plaintiff seeks an entry of default judgment in the amount of $111,600 ($10,000 for statutory damages, $100,000 for enhanced damages and $1,600 for conversion).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair

Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted).); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

## DISCUSSION

A.   The Eitel Factors

    1.   Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

    2.   Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The

undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

      Plaintiff seeks entry of default judgment on its claims brought pursuant to 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a).[3] Plaintiff's inability to allege the precise nature of the intercepted transmission in this case, which is largely due to defendant's failure to appear or defend itself in the action, raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision. The Federal Communications Act prohibits, among other things, commercial establishments from intercepting and broadcasting radio communications to its patrons. See 47 U.S.C. § 605(a). In relevant part, 47 U.S.C. § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a). DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008).

/////

---

[3] The undersigned does not address the merits of, or sufficiency of the allegations in support of, plaintiff's state law claim for conversion. As discussed more fully below, the undersigned need not reach plaintiff's conversion claim because the recommended statutory damages will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative.

5

The scope of section 605(a) is less clear with respect to transmissions intercepted from a cable system, which are expressly covered under 47 U.S.C. § 553(a). Section 553(a) states, in relevant part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).[4]

Here, plaintiff has not alleged whether the transmission that defendant intercepted was from a cable system or a satellite television signal. As plaintiff's brief correctly suggests, a split of authority has developed regarding the scope of section 605(a) in that numerous courts have concluded that section 605(a) applies exclusively to broadcasts obtained by way of a satellite television signal, as opposed to transmissions over a cable system, and that section 553 applies exclusively to transmission over a cable system. Compare United States v. Norris, 88 F.3d 462, 466-69 (7th Cir. 1996) (holding that sections 553(a) and 605(a) are not "overlapping statutes" and are thus mutually exclusive), with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely overlapping); see also TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (recognizing the disagreement between the holdings in Norris and Sykes, and holding "that § 605 encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system, and no more" (internal quotation marks omitted).).

/////

---

[4] Section 553 carries lower minimum statutory damages and lower enhanced damages than section 605. Compare 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii) (providing for the award of statutory damages of not less than $1,000 and no more than $10,000, and under certain circumstances enhanced damages of up to $100,000 per violation), with 47 U.S.C. § 553(c)(3)(A)(ii) (providing for the award of statutory damages of not less than $250 and not more than $10,000, and under certain circumstances enhanced damages of up to $50,000 per violation).

At a minimum, plaintiff's complaint and evidence support a conclusion that defendant intercepted, without authorization, a transmission of the Program and broadcast it to its patrons. Plaintiff essentially concedes that its complaint and the record contain no allegations or evidence substantiating the nature of the transmission that was intercepted by defendant. Plaintiff argues, however, that although it was unable to allege the precise means of transmission in this case (i.e., transmission over a cable system or satellite broadcast), it "should not be prejudiced" given defendant's failure to appear or defend itself in this action. Pl.'s Memo. of P. & A. in Supp. of Motion for Default J. at 8. The undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendant's failure to appear or defend itself in this action, plaintiff should not suffer the resulting prejudice. In any event, the split of authority presented above has little practical impact in this case because the undersigned will recommend the entry of a judgment in the total amount of $10,000, which is the maximum, non-enhanced statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. § 605(e)(3)(C)(i)(II). Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the Eitel factors are concerned, the complaint and record before the undersigned favor entry of default judgment.

    3.    <u>Factor Four: The Sum of Money at Stake in the Action</u>

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; <u>see</u> also <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff seeks a significant amount of damages, i.e., $116,000. However, plaintiff's request for statutory damages and damages for conversion are tailored to defendant's specific wrongful conduct. Plaintiff seeks statutory damages under the federal statutes implicated by its claims and, although plaintiff requests $110,000 in statutory damages,

the statutes involved contemplate such an award under certain circumstances.[5] Under these circumstances, the undersigned concludes that this factor favors the entry of default judgment.

    4.    <u>Factor Five: The Possibility of a Dispute Concerning Material Facts</u>

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.[6] <u>See</u>, <u>e.g.</u>, <u>Elektra Entm't Group Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); <u>accord</u> <u>Philip Morris USA, Inc.</u>, 219 F.R.D. at 500; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.

    5.    <u>Factor Six: Whether the Default Was Due to Excusable Neglect</u>

Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect. <u>See</u> <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. Plaintiff served the defendant with the summons and complaint. Moreover, plaintiff served defendant by mail with notice of its application for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has not appeared in this action to date. Thus, the record suggests that defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this <u>Eitel</u> factor favors the entry of a default judgment.

/////

---

[5] Whether plaintiff is entitled to an award of this size is a different issue, which the undersigned addresses in greater detail below.

[6] Defendant's failure to file an answer in this case or a response to the instant default application further supports the conclusion that the possibility of a dispute as to material facts is minimal.

      6.      <u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see</u> also <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, ___ F. Supp. 2d ___, No. C 08-5065 PJH, 2010 WL 807446, at *16 (N.D. Cal. Mar. 5, 2010); <u>ACS Recovery Servs., Inc. v. Kaplan</u>, No. C 09-01304, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); <u>Hartung v. J.D. Byrider, Inc.</u>, No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished). Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the <u>Eitel</u> factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendant and will make a recommendation to that effect. What remains is the determination of the amount of damages to which plaintiff is entitled.

B.      <u>Terms of Judgment</u>

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $10,000 as a result of defendant's unlawful interception and broadcast of the Program, and will recommend the same.

Pursuant to section 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also

award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii). Where a violation 47 U.S.C. § 553(a) is concerned, a court may award statutory damages of "not less than $250 or more than $10,000," and may increase the award up to $50,000 if the "violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(A), (B).

Here, plaintiff seeks a judgment in the amount of $116,000. Plaintiff's application for default judgment and proposed order indicate that this sum consists of $110,000 for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $1,600 as compensatory damages arising from defendant's act of conversion.

In this case, plaintiff's investigator provided evidence that the establishment, which has a capacity of 60 patrons, had about between 10 and 13 patrons inside on the day in question and that defendant was unlawfully broadcasting the Program on three televisions. Affiant Decl., Doc. No. 23-3. Defendant's establishment is not large, and there is no evidence of a repeat violation or additional egregious circumstances. The investigator reported that there was no cover charge for entry on the night in question. There is no evidence before the court of any promotion by defendant that the fight would be shown at the establishment. There is also no evidence before the court that a special premium on food and drink was being charged at the establishment on the night of the fight or that the establishment was doing any greater level of business on the night the fight was shown that at any other time. Finally, plaintiff has presented no evidence to the court suggesting that the defendant was a repeat broadcast piracy offender. Balancing these facts with the widespread problem of piracy and the need for an award sufficient to deter future piracy, the undersigned will recommend an award of statutory damages in the amount of $10,000. On the record before the court, the undersigned does not find that this case merits an award of enhanced damages.

/////

1    Plaintiff also seeks actual damages for defendant's alleged tortious act of
2 conversion in the amount of $1,600, which consists of the fee that defendant would have had to
3 pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense.[7]
4 The undersigned will not recommend an award of damages with respect to plaintiff's conversion
5 claim.  The statutory damages provisions at issue serve not only a deterrent function, see J & J
6 Sports Prods. v. Orellana, No. 08-05468 CW, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19,
7 2010) (unpublished), but also a compensatory function, which is evidenced by provisions that
8 permit the award of statutory damages or actual damages in a civil action.  See 47 U.S.C.
9 § 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i).  Here, the recommended award of statutory
10 damages in the amount of $10,000 sufficiently compensates plaintiff, and this case does not
11 present a set of circumstances where an additional award might be warranted.  Accordingly, the
12 undersigned will recommend that plaintiff be awarded no damages on its conversion claim.
13    Finally, although the prayer for relief in the complaint and the application for
14 default judgment indicate that plaintiff seeks the award of costs and attorneys' fees, the
15 application for default judgment contains no argument or evidence in support of such a request.
16 Accordingly, the undersigned will not recommend the award of costs or attorneys' fees.
17    For the reasons stated above, IT IS HEREBY ORDERED that the April 5, 2012
18 hearing on plaintiff's motion for default judgment is vacated; and
19    IT IS HEREBY RECOMMENDED that:
20    1.    Plaintiff's application for default judgment be granted;
21    2.    The court enter judgment against defendant on plaintiff's claims brought
22 pursuant to 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a);
23 /////

---

[7] Damages for conversion are measured, in relevant part, by the value of the property at the time of the conversion.  Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649 F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221, 7 Cal. Rptr. 3d 597, 608 (Ct. App. 2003).

        3.       The court award statutory damages in an amount of $10,000.00 to plaintiff; and

        4.       This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: March 30, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

/014;j&j1053.mdj