1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   J & J SPORTS PRODUCTIONS, INC.,

11            Plaintiff,                    No. CIV 10-cv-1053-JAM-JFM

12       vs.

13   ROBERTA LUALA CURTIS, dba
     TIERRA BUENA TAVERN,                   ORDER AND
14
              Defendant.                    FINDINGS & RECOMMENDATIONS
15
     _____/
16
                    Pending before the court is plaintiff's motion for default judgment against

17
     defendant Roberta Luala Curtis, doing business as Tierra Buena Tavern, located at 2365 Butte

18
     House Road, Yuba City, CA 95993.  The court has determined that the matter shall be submitted

19
     upon the record and briefs on file and accordingly, the date for hearing of this matter shall be

20
     vacated.  Local Rule 230.  Upon review of the motion and the supporting documents, and good

21
     cause appearing, the court finds as follows:

22
                           FACTUAL AND PROCEDURAL BACKGROUND

23
                    On April 29, 2010, plaintiff, an international distributor of sports and

24
     entertainment  programming, filed a complaint against defendant alleging that the latter

25
     unlawfully intercepted and exhibited a broadcast of a program featuring a welterweight

26

                                               1

championship boxing fight between Manny Pacquiao and Ricky Hatton, IBO Welterweight

Championship Fight Program ("the Program")[1] in her establishment for commercial advantage

without obtaining a sublicense from plaintiff for its use, in violation of the Communications Act,

47 U.S.C. § 605, the Cable Communications Policy Act, 47 U.S.C. § 553, and state law.  The

complaint alleges defendant exhibited the Program on May 2, 2009.

Plaintiff brings this action pursuant to (1) a violation of 47 U.S.C. § 605

(Unauthorized Publication or Use of Communications) alleging that defendant knowingly

intercepted, received, and exhibited the Program for purposes of direct or indirect commercial

advantage or private financial gain; (2) a violation of 47 U.S.C. § 553 (Unauthorized Reception

of Cable Services) based upon the same allegations; (3) a claim for conversion alleging that

defendant tortiously obtained possession of the Program and wrongfully converted it for his own

benefit; and (4) a violation of the California Business & Professions Code § 17200, et. seq.

In the complaint, plaintiff seeks $110,000 in statutory damages as well as

attorneys' fees and costs for Count I; $60,000 in statutory damages, as well as attorneys' fees and

costs for Count II; compensatory damages, exemplary damages, and punitive damages for Count

III; and restitution, declaratory relief, injunctive relief, and attorneys' fees for Count IV.[2]

The summons and complaint were served on defendant by personal service on

July 7, 2010.  See Doc. No. 5; Fed. R. Civ. P. 4(e)(2); Pacific Atlantic Trading Co. v. M/V Main

Express, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal

---

[1]  The Program included the main boxing match between Manny Pacquiao and Ricky Hatton, as well as the undercard (preliminary) matches, televised replay and fight commentary. See Pl.'s Mem. of P. & A. in Supp. of Mot. for Default J. at 1.  The affiant declaration submitted in support of plaintiff's motion for default judgment notes that defendant was broadcasting a boxing match between Matt Korobov and Anthony Bartinelli, the undercard match of the Program.  See Gagliardi Decl., ¶ 7; Aff. Decl., Doc. No. 23-3 at 2.

[2]  On November 10, 2010, this action was dismissed by stipulation of the parties.  See Doc. Nos. 11-12.  On February 15, 2011, plaintiff filed a motion to set aside judgment based on defendant's failure to comply with the parties' settlement.  Doc. No. 13.  By order dated March 22, 2011, the Honorable Frank C. Damrell, Jr., granted plaintiff's motion and reopened the case.

1  jurisdiction). Defendant has failed to file an answer or otherwise appear in this action. The clerk

2  entered default against defendant on September 14, 2011.

3          Request for entry of default and the instant motion for default judgment and

4  supporting papers were served by mail on defendant at her last known address. Doc. No. 23.

5  Defendant did not file an opposition to the motion for entry of default judgment. Plaintiff seeks

6  an entry of default judgment in the amount of $111,600 ($10,000 for statutory damages,

7  $100,000 for enhanced damages and $1,600 for conversion).

8                                    LEGAL STANDARD

9          Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a

10 party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

11 defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not

12 automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans,

13 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

14 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead,

15 the decision to grant or deny an application for default judgment lies within the district court's

16 sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this

17 determination, the court may consider the following factors:

18          (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's
            substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at
19          stake in the action; (5) the possibility of a dispute concerning material facts; (6)
            whether the default was due to excusable neglect; and (7) the strong policy
20          underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

21 Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily

22 disfavored. Id. at 1472.

23          As a general rule, once default is entered, well-pleaded factual allegations in the

24 operative complaint are taken as true, except for those allegations relating to damages.

25 TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing

26 Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair

3

1   Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded

2   allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts

3   not contained in the pleadings, and claims which are legally insufficient, are not established by

4   default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning

5   v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847,

6   854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to

7   admit conclusions of law" (citation and quotation marks omitted).); Abney v. Alameida, 334 F.

8   Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally

9   insufficient claim.").  A party's default conclusively establishes that party's liability, although it

10  does not establish the amount of damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v.

11  Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered

12  pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the

13  liability of the defaulting party).

14                                    DISCUSSION

15  A.      The Eitel Factors

16          1.      Factor One: Possibility of Prejudice to Plaintiff

17                  The first Eitel factor considers whether the plaintiff would suffer prejudice if

18  default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of

19  granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would

20  potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default

21  judgment, plaintiff would be without another recourse for recovery.  Accordingly, the first Eitel

22  factor favors the entry of default judgment.

23          2.      Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the
                    Sufficiency of the Complaint

24

25                  The undersigned considers the merits of plaintiff's substantive claims and the

26  sufficiency of the complaint together below because of the relatedness of the two inquiries.  The

                                              4

1    undersigned must consider whether the allegations in the complaint are sufficient to state a claim

2    that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at

3    1175.

4             Plaintiff seeks entry of default judgment on its claims brought pursuant to 47

5    U.S.C. § 605(a) and 47 U.S.C. § 553(a).[3]  Plaintiff's inability to allege the precise nature of the

6    intercepted transmission in this case, which is largely due to defendant's failure to appear or

7    defend itself in the action, raises a question regarding the scope of 47 U.S.C. § 605(a) and the

8    sufficiency of plaintiff's claim under that provision.  The Federal Communications Act prohibits,

9    among other things, commercial establishments from intercepting and broadcasting  radio

10   communications to its patrons.  See 47 U.S.C. § 605(a).  In relevant part, 47 U.S.C. § 605(a)

11   states:

12          No person not being authorized by the sender shall intercept any radio
            communication and divulge or publish the existence, contents, substance, purport,
13          effect, or meaning of such intercepted communication to any person.  No person
            not being entitled thereto shall receive or assist in receiving any interstate or
14          foreign communication by radio and use such communication (or any information
            therein contained) for his own benefit or for the benefit of another not entitled
15          thereto.  No person having received any intercepted radio communication or
            having become acquainted with the contents, substance, purport, effect, or
16          meaning of such communication (or any part thereof) knowing that such
            communication was intercepted, shall divulge or publish the existence, contents,
17          substance, purport, effect, or meaning of such communication (or any part
            thereof) or use such communication (or any information therein contained) for his
18          own benefit or for the benefit of another not entitled thereto.

19   The Ninth Circuit Court of Appeals has determined that satellite television signals are covered

20   communications under 47 U.S.C. § 605(a).  DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th

21   Cir. 2008).

22   /////

23

24          [3]  The undersigned does not address the merits of, or sufficiency of the allegations in
     support of, plaintiff's state law claim for conversion.  As discussed more fully below, the
25   undersigned need not reach plaintiff's conversion claim because the recommended statutory
     damages will sufficiently compensate plaintiff such that an award for conversion damages would
26   be duplicative.

1        The scope of section 605(a) is less clear with respect to transmissions intercepted

2   from a cable system, which are expressly covered under 47 U.S.C. § 553(a).  Section 553(a)

3   states, in relevant part:  "No person shall intercept or receive or assist in intercepting or receiving

4   any communications service offered over a cable system, unless specifically authorized to do so

5   by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C.

6   § 553(a)(1).[4]

7        Here, plaintiff has not alleged whether the transmission that defendant intercepted

8   was from a cable system or a satellite television signal.  As plaintiff's brief correctly suggests, a

9   split of authority has developed regarding the scope of section 605(a) in that numerous courts

10  have concluded that section 605(a) applies exclusively to broadcasts obtained by way of a

11  satellite television signal, as opposed to transmissions over a cable system, and that section 553

12  applies exclusively to transmission over a cable system.  Compare United States v. Norris, 88

13  F.3d 462, 466-69 (7th Cir. 1996) (holding that sections 553(a) and 605(a) are not "overlapping

14  statutes" and are thus mutually exclusive), with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123,

15  132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely overlapping);

16  see also TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (recognizing

17  the disagreement between the holdings in Norris and Sykes, and holding "that § 605

18  encompasses the interception of satellite transmissions to the extent reception or interception

19  occurs prior to or not in connection with, distribution of the service over a cable system, and no

20  more" (internal quotation marks omitted).).

21  /////

22

23      [4] Section 553 carries lower minimum statutory damages and lower enhanced damages
    than section 605.  Compare 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii) (providing for
24  the award of statutory damages of not less than $1,000 and no more than $10,000, and under
    certain circumstances enhanced damages of up to $100,000 per violation), with 47 U.S.C.
25  § 553(c)(3)(A)(ii) (providing for the award of statutory damages of not less than $250 and not
    more than $10,000, and under certain circumstances enhanced damages of up to $50,000 per
26  violation).

6

1            At a minimum, plaintiff's complaint and evidence support a conclusion that

2  defendant intercepted, without authorization, a transmission of the Program and broadcast it to

3  its patrons.  Plaintiff essentially concedes that its complaint and the record contain no allegations

4  or evidence substantiating the nature of the transmission that was intercepted by defendant.

5  Plaintiff argues, however, that although it was unable to allege the precise means of transmission

6  in this case (i.e., transmission over a cable system or satellite broadcast), it "should not be

7  prejudiced" given defendant's failure to appear or defend itself in this action.  Pl.'s Memo. of P.

8  & A. in Supp. of Motion for Default J. at 8.  The undersigned agrees with plaintiff that under the

9  circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery

10  regarding the transmission at issue because of defendant's failure to appear or defend itself in

11  this action, plaintiff should not suffer the resulting prejudice.  In any event, the split of authority

12  presented above has little practical impact in this case because the undersigned will recommend

13  the entry of a judgment in the total amount of $10,000, which is the maximum, non-enhanced

14  statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. §

15  605(e)(3)(C)(i)(II).  Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency

16  of its pleadings under the <u>Eitel</u> factors are concerned, the complaint and record before the

17  undersigned favor entry of default judgment.

18           3.    <u>Factor Four: The Sum of Money at Stake in the Action</u>

19            Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of

20  money at stake in relation to the seriousness of Defendant's conduct." <u>PepsiCo, Inc.</u>, 238 F.

21  Supp. 2d at 1177; <u>see also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494,

22  500 (C.D. Cal. 2003).  Here, plaintiff seeks a significant amount of damages, i.e., $116,000.

23  However, plaintiff's request for statutory damages and damages for conversion are tailored to

24  defendant's specific wrongful conduct.  Plaintiff seeks statutory damages under the federal

25  statutes implicated by its claims and, although plaintiff requests $110,000 in statutory damages,

26

the statutes involved contemplate such an award under certain circumstances.[5]  Under these

circumstances, the undersigned concludes that this factor favors the entry of default judgment.

      4.    Factor Five: The Possibility of a Dispute Concerning Material Facts

      The facts of this case are relatively straightforward, and plaintiff has provided the

court with well-pleaded allegations supporting its statutory claims and affidavits in support of its

allegations.  Here, the court may assume the truth of well-pleaded facts in the complaint (except

as to damages) following the clerk's entry of default and, thus, there is no likelihood that any

genuine issue of material fact exists.[6]  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226

F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken

as true after the court clerk enters default judgment, there is no likelihood that any genuine issue

of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238

F. Supp. 2d at 1177.

      5.    Factor Six: Whether the Default Was Due to Excusable Neglect

      Upon review of the record before the court, the undersigned finds that the default

was not the result of excusable neglect.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Plaintiff

served the defendant with the summons and complaint.  Moreover, plaintiff served defendant by

mail with notice of its application for default judgment.  Despite ample notice of this lawsuit and

plaintiff's intention to seek a default judgment, defendant has not appeared in this action to date.

Thus, the record suggests that defendant has chosen not to defend this action, and not that the

default resulted from any excusable neglect.  Accordingly, this Eitel factor favors the entry of a

default judgment.

/////

---

[5] Whether plaintiff is entitled to an award of this size is a different issue, which the undersigned addresses in greater detail below.

[6] Defendant's failure to file an answer in this case or a response to the instant default application further supports the conclusion that the possibility of a dispute as to material facts is minimal.

6.   Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., ___ F. Supp. 2d ___, No. C 08-5065 PJH, 2010 WL 807446, at *16 (N.D. Cal. Mar. 5, 2010); ACS Recovery Servs., Inc. v. Kaplan, No. C 09-01304, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc., No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished).  Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendant and will make a recommendation to that effect.  What remains is the determination of the amount of damages to which plaintiff is entitled.

B.   Terms of Judgment

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $10,000 as a result of defendant's unlawful interception and broadcast of the Program, and will recommend the same.

Pursuant to section 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also

award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii). Where a violation 47 U.S.C. § 553(a) is concerned, a court may award statutory damages of "not less than $250 or more than $10,000," and may increase the award up to $50,000 if the "violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(A), (B).

Here, plaintiff seeks a judgment in the amount of $116,000. Plaintiff's application for default judgment and proposed order indicate that this sum consists of $110,000 for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $1,600 as compensatory damages arising from defendant's act of conversion.

In this case, plaintiff's investigator provided evidence that the establishment, which has a capacity of 60 patrons, had about between 10 and 13 patrons inside on the day in question and that defendant was unlawfully broadcasting the Program on three televisions. Affiant Decl., Doc. No. 23-3. Defendant's establishment is not large, and there is no evidence of a repeat violation or additional egregious circumstances. The investigator reported that there was no cover charge for entry on the night in question. There is no evidence before the court of any promotion by defendant that the fight would be shown at the establishment. There is also no evidence before the court that a special premium on food and drink was being charged at the establishment on the night of the fight or that the establishment was doing any greater level of business on the night the fight was shown that at any other time. Finally, plaintiff has presented no evidence to the court suggesting that the defendant was a repeat broadcast piracy offender. Balancing these facts with the widespread problem of piracy and the need for an award sufficient to deter future piracy, the undersigned will recommend an award of statutory damages in the amount of $10,000. On the record before the court, the undersigned does not find that this case merits an award of enhanced damages.

/////

Plaintiff also seeks actual damages for defendant's alleged tortious act of conversion in the amount of $1,600, which consists of the fee that defendant would have had to pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense.[7] The undersigned will not recommend an award of damages with respect to plaintiff's conversion claim. The statutory damages provisions at issue serve not only a deterrent function, see J & J Sports Prods. v. Orellana, No. 08-05468 CW, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010) (unpublished), but also a compensatory function, which is evidenced by provisions that permit the award of statutory damages or actual damages in a civil action. See 47 U.S.C. § 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i). Here, the recommended award of statutory damages in the amount of $10,000 sufficiently compensates plaintiff, and this case does not present a set of circumstances where an additional award might be warranted. Accordingly, the undersigned will recommend that plaintiff be awarded no damages on its conversion claim.

Finally, although the prayer for relief in the complaint and the application for default judgment indicate that plaintiff seeks the award of costs and attorneys' fees, the application for default judgment contains no argument or evidence in support of such a request. Accordingly, the undersigned will not recommend the award of costs or attorneys' fees.

For the reasons stated above, IT IS HEREBY ORDERED that the April 5, 2012 hearing on plaintiff's motion for default judgment is vacated; and

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's application for default judgment be granted;

2. The court enter judgment against defendant on plaintiff's claims brought pursuant to 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a);

/////

---

[7] Damages for conversion are measured, in relevant part, by the value of the property at the time of the conversion. Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649 F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221, 7 Cal. Rptr. 3d 597, 608 (Ct. App. 2003).

3.     The court award statutory damages in an amount of $10,000.00 to plaintiff; and

4.     This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: March 30, 2012.

UNITED STATES MAGISTRATE JUDGE

/014;j&j1053.mdj

12